No. 16-15

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

DUSTIN JOHN HIGGS,
*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,
*Respondent-Appellee.*

_____

On Appeal from the United States District Court
for the District of Maryland
Criminal No. PJM-98-0520, Hon. Peter J. Messitte, U.S.D.J.

_____

## REQUEST FOR CERTIFICATE OF APPEALABILITY

Leigh Skipper, Esq.
Chief Federal Defender
Matthew Lawry
Aren Adjoian
Cristi Charpentier
Elizabeth Hadayia
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Stephen H. Sachs
Wilmer Cutler Pickering Hale
& Dorr, LLP
5 Roland Mews
Baltimore, MD 21210
410-532-8405

Dated:      January 13, 2017

**STATEMENT OF JURISDICTION**

This is an appeal from a district court order denying a Rule 60(d) motion in capital proceedings under 28 U.S.C. § 2255. Upon granting a Certificate of Appealability ("COA"), this Court will have jurisdiction over Petitioner's appeal pursuant to 28 U.S.C. §§ 1291 and 2253.

**STATEMENT OF THE ISSUES**

Should this Court grant a COA because: (I) the merits of Petitioner's claim for relief under *Brady v. Maryland* are debatable among jurists of reason; and (II) the correctness of the district court's ruling that Petitioner had failed to make a prima facie showing of a fraud on the court is debatable among jurists of reason.

**STATEMENT OF THE CASE**

A detailed Statement of the Case is included in the Initial Brief of Appellant, which is being filed today in a separate document pursuant to Fourth Circuit Local Rule 22(a)(1)(B). In the interest of brevity, we do not provide a detailed statement of the case herein.

Briefly, Mr. Higgs was convicted of nine death eligible counts and related charges in the homicides of three young women on federal land, which took place in January 1996. His convictions and death sentences were affirmed on direct appeal, as was the district court's denial of his motion for a new trial. *United*

*States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) ("*Higgs-1*") and *United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004) ("*Higgs-2*"). The United States Supreme Court denied Mr. Higgs's petitions for writ of certiorari on November 29, 2004. *Higgs v. United States*, 125 S. Ct. 627 (2004); *Higgs v. United States*, 125 S. Ct. 608 (2004).

Mr. Higgs filed a motion for relief pursuant to 28 U.S.C. § 2255. A-035 (hereafter "2255 Motion")[1]. He also moved for discovery and a hearing with respect to several of the claims alleged in the petition, including a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). On April 7, 2010, the district court summarily denied the motion, *United States v. Higgs*, 711 F. Supp. 2d 479 (D. Md. 2010) ("*Higgs-3*").

Mr. Higgs sought a COA from this Court on several issues, including his *Brady* claim. This Court denied a COA on all but one issue, and subsequently denied relief. *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011) ("*Higgs-4*"). The United States Supreme Court denied certiorari on December 10, 2012. *Higgs v. United States*, 133 S.Ct. 787 (2012).

---

[1] Items included in the Appendix being filed along with the Initial Brief for Appellant are cited as A-___.

On December 4, 2014, after receiving previously undisclosed documents from the Baltimore Police Department, Mr. Higgs filed his motion for relief from the district court's judgment, pursuant to *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and Federal Rule of Civil Procedure 60(d). ECF No. 579, A-xx (hereafter "Rule 60(d) Motion"). On June 29, 2016, the district court denied relief without granting discovery or a hearing. *United States v. Higgs*, 2016 WL 3541387 (D. Md. June 29, 2016) ("*Higgs-5*"); *see* A-441.

Mr. Higgs filed a timely notice of appeal. A-475. This Court remanded for the district court to decide whether to issue a COA. Order of August 30, 2016, Doc. 3. On November 22, 2016, the district court issued an opinion and order denying Mr. Higgs's request for a COA. A-477.

**STANDARD FOR GRANTING A CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253 and Rule 22(b) of the Federal Rules of Appellate Procedure, a habeas petitioner who wishes to appeal from a final order of a district court must obtain a COA for each claim he wishes to present to the Court of Appeals.

In *Slack v. McDaniel*, 529 U.S. 473, 483 (2000), the Supreme Court concluded that, "[e]xcept for substituting the word 'constitutional' for the word 'federal,'" this COA requirement is merely "a codification of" the earlier standard

4

for granting a certificate of probable cause, as "announced in *Barefoot v. Estelle*," 463 U.S. 880, 894 (1983). The purpose of the COA requirement is "to prevent frivolous appeals." *Id.* at 893. COA must be granted if the issue is "debatable among jurists of reason"; "a court could resolve the issue[] [in a different manner]"; or "the question[] [is] adequate to deserve encouragement to proceed further." *Id.* at 893 n.4.

In *Miller-El v. Cockrell*, 537 U.S. 322 (2003), the Supreme Court held that the standard for the issuance of a certificate of appealability in an AEDPA case is as follows: "Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id.* at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000)).

In *Miller-El*, the Court emphasized that in order to grant a COA, a court need not be convinced of the ultimate merits. "[W]e decide again that when a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition, the court of appeals should limit its examination to a threshold inquiry into the underlying merit of his claims." *Miller-El*, 537 U.S. at 327.

5

Finally, where (as here) COA is sought with respect to a district court's procedural rulings, in order to decide whether to grant COA the reviewing court must consider both whether the procedural rulings are "debatable amongst jurists of reason" and also whether the underlying claims raise a constitutional issue that is similarly debatable. *Slack*, 529 U.S. at 484-85. Accordingly, we address both questions below.[2]

## I. THE MERITS OF THE *BRADY* CLAIM ARE DEBATABLE AMONG JURISTS OF REASON.

The three essential elements of a *Brady* claim are as follows: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Mr. Higgs made a substantial showing as to all three elements.

---

[2] There was some debate below as to whether the district court's ruling is properly characterized as a "procedural" ruling. We use that term to make clear that the ruling at issue was not on the merits of the *Brady* claim, but on whether Mr. Higgs could overcome – under Rule 60(d) and *Hazel-Atlas* – what would otherwise be procedural impediments to consideration of the merits of the *Brady* claim.

**A.** **Mr. Higgs Made a Substantial Showing that the Government Suppressed Favorable Impeachment Evidence.**

As part of the original § 2255 proceedings challenging Mr. Higgs's convictions and sentences, he alleged that the government did not turn over all of the material relating to key government witness Victor Gloria that it was required to under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. Specifically, Mr. Higgs alleged that Mr. Gloria was a suspect, but was never charged, in the unrelated homicide of Martrelle Creighton in Baltimore. 2255 Motion, A-049. Mr. Higgs further alleged that Mr. Gloria was not charged with the Creighton homicide at the behest of the government "in an effort to preserve his status as a testifying witness in this federal capital triple homicide case." *Id.* Mr. Higgs alleged that the government's failure to disclose this favorable treatment of Mr. Gloria violated Mr. Higgs's due process rights. *Id.*

While Mr. Higgs had a good faith basis for making these allegations, he had little in the way of hard evidence to support them, as *Brady* claims necessarily involve suppressed information that is uniquely in the possession of the government. Accordingly, he moved for discovery for the purpose of substantiating his *Brady* claim. *See* Mot. for Discovery, A-xx. In response to Mr. Higgs's allegations and discovery request, s*ee* A-056-57, the government

7

emphatically denied that it had done anything to confer any benefits on Mr. Gloria with respect to the Baltimore homicide.  A-066, 080, 082.

The district court denied Mr. Higgs's claim without discovery or a hearing, adopting the government's line of argument.  The district court ruled that "pure speculation about supposed benefits cannot substitute for hard facts," and that "Higgs, quite simply, has failed to demonstrate any causal connection between Gloria's testimony in this federal case and whatever treatment he may have received in the state jurisdictions."  *Higgs-3*, 711 F. Supp. 2d at 508.

Following the denial of relief in the § 2255 proceedings, Mr. Higgs succeeded in obtaining the Baltimore Police Department file regarding the Creighton homicide.  That file contained evidence of numerous contacts between multiple federal agencies and Baltimore authorities, including documentation of a gratuitous suggestion from Assistant United States Attorney Deborah Johnston that Mr. Gloria was being framed for the Creighton homicide, which was evidently intended to influence the Baltimore authorities in the conduct of the Creighton investigation.  *See* A-087, 095-99.  Based on the contents of that file, Mr. Higgs sought relief under Fed. R. Civ. P. 60(d) and *Hazel-Atlas*, and filed a renewed motion for additional discovery.  *Id.*; A-285.

To the extent that the district court addressed the first two *Brady* elements (favorability and suppression) it did so in the context of the fraud on the court allegations. *See* DCO, A-459-70. The district court denied relief without holding a hearing or allowing discovery. On the merits of the *Brady* claim, dismissal was only warranted if Mr. Higgs's "allegations, when viewed against the record [before the court are] so 'palpably incredible,' so 'patently frivolous or false,' as to warrant summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (citations omitted). Given the contents of the Baltimore Police Department file, the allegations regarding favorability and suppression are easily strong enough to foreclose summary dismissal.

The federal investigative and prosecutorial authorities had numerous contacts with the Baltimore authorities concerning the Creighton homicide investigation, the federal authorities informed the Baltimore authorities that Mr. Gloria was a critical witness in the instant case, and the federal authorities suggested to the Baltimore authorities that Mr. Gloria was being framed. *See* A-087, 095-99. Moreover, two eyewitnesses who were friends of Mr. Creighton and who would not have shared the purported motive to frame Mr. Gloria also initially described the man matching Mr. Gloria's description as being culpable, yet Baltimore authorities still did not charge him or even interview him. *Id*. And the

9

Baltimore authorities conditioned their charging decision for Mr. Gloria on the receipt of further (as yet undisclosed) information from federal authorities. *See* A-086, 095-99. None of these facts were disclosed at the time of trial.

Any evidence that would tend to call the government's case into doubt is favorable for *Brady* purposes. *See Strickler,* 527 U.S. at 290. Evidence that a key government witness was the beneficiary of favors of such value to a man who was potentially facing first degree murder charges is classic impeachment that easily meets the favorability prong of *Brady*. *See, e.g., Breakiron v. Horn*, No. 00-300, 2008 WL 4412057, *28 (W.D. Pa. Sept. 24, 2008) (evidence that key witness was a suspect in an unrelated robbery investigation was favorable impeachment that should have been disclosed), *aff'd in relevant part*, 642 F.3d 126 (3d Cir. 2011); *see also* 642 F.3d at 133 n.8 (noting that at time of 1988 trial it was "axiomatic that prosecutors must disclose impeachment evidence like that at issue here").

While acknowledging that Mr. Higgs had "obtained considerable evidence to support his motion," DCO, A-472 n.15, the district court ultimately denied relief after its review of the Baltimore Police file documents led it to conclude that it was "more likely that the decision not to charge Gloria was based not on federal intervention, but on the Baltimore authorities' own assessment of strength of the evidence in their case."). DCO, A466.

It is at the very least debatable that Mr. Higgs is entitled to relief on the existing record. But a COA is particularly appropriate here, where the district court's conclusion was not reached on the basis of a fully developed record. Rather, Mr. Higgs sought but was denied further discovery consisting of any evidence regarding his allegations contained in the government's own files, A-287-88, as well as previously requested discovery from the Baltimore County Public Defender and the Baltimore County prosecutors. *Id.*; A-056-57. Mr. Higgs also sought an evidentiary hearing. A-088, 114. Such additional factual development was important here, as all of the evidence shedding light on Mr. Higgs's claim was not necessarily written down and placed in the Baltimore Police file. Such evidence likely exists in the United States Attorney's file as well as in the form of witness testimony. The district court, however, denied the Rule 60(d) motion without allowing the requested discovery or evidentiary hearing.

Given the detailed nature of Mr. Higgs's allegations, supported by the contents of the Baltimore Police Department file, the district court's pre-discovery rejection of the *Brady* claim is erroneous. *See, e.g.*, *Blackledge*, 431 U.S. at 78, 81-82 (petitioner's allegations of improperly induced plea agreement were not "so 'patently false or frivolous' as to warrant dismissal"; allegations could be tested through discovery); *Sanders v. United States*, 373 U.S. 1, 19-20 (1963) (because

11

"the facts on which petitioner's claim is predicated are outside the record," the "'files and records of the case' . . . could not 'conclusively show' that the claim . . . entitled the petitioner to no relief."); *Machibroda v. United States*, 368 U.S. 487, 494 (1962) (the district court should not have "made findings on controverted issues of fact without notice to the petitioner and without a hearing.").  At the very least, it is subject to debate among jurists of reason whether Mr. Higgs's allegations and supporting documents were sufficient to preclude the denial of relief without first providing the requested factual development.

## B.  Mr. Higgs Made a Substantial Showing of Materiality.

At the end of its opinion denying the Rule 60 Motion, the district court briefly reprised its previous assertion that evidence that benefits were conferred on Mr. Gloria for his testimony "could not have further undermined his already low credibility . . . ."  DCO, A-470 (quoting *Higgs-3*, 711 F. Supp. 2d at 508).  That ruling is at the very least debatable among jurists of reason.

The lynchpin of the district court's materiality analysis is that Mr. Gloria was so thoroughly impeached that no further impeachment of him could have made any difference.  *Id.*  That conclusion is highly questionable for several reasons.

First, it is impossible to overstate the importance of Mr. Gloria to the government's case. As this Court noted on direct appeal, "Most of the facts surrounding the murders of the three women were obtained from [Mr. Gloria's] eyewitness testimony." *Higgs-1*, 353 F.3d at 289 n.1; *see also id.* at 313-14 (evidence of kidnapping, felony and premeditated murder is all derived from Mr. Gloria's testimony). While this Court stated that Mr. Gloria's testimony was "partially corroborated," *id.* at 289 n.1, by evidence associating the decedents with a car of the type driven by Mr. Higgs, that evidence by itself would have been insufficient to charge Mr. Higgs with any crime, let alone prove his guilt of kidnapping and murder, as the government has admitted. A-120 (argument of AUSA Johnston at Mr. Gloria's sentencing hearing that "the government could not have proceeded and obtain[ed] a conviction against Mr. Higgs certainly without the assistance of Mr. Gloria."). *See also Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (where eyewitness's "testimony was the *only* evidence linking [the defendant] to the crime," impeaching statements "were plainly material"); *Kyles v. Whitley*, 514 U.S. 419, 444 (1995) ("The likely damage is best understood by taking the word of the prosecutor, who contended during closing arguments that Smallwood and Williams were the State's two best witnesses."); *Wolfe v. Clarke*, 691 F.3d 410,

13

424 (4th Cir. 2012) (materiality of impeachment evidence is "manifest" where jury had to believe witness to support petitioner's conviction).

Second, given the importance of Mr. Gloria's testimony, it is evident that the jury credited that testimony, regardless of trial counsel's attempts to impeach his credibility.

Third, the assertion that additional impeachment of Mr. Gloria would not have made any difference is both legally and factually erroneous; it is certainly debatable. As a legal matter, courts have frequently rejected such arguments when reviewing *Brady* claims. *See, e.g.*, *Banks v. Dretke*, 540 U.S. 668, 702 (2004) (rejecting argument that because witness "was heavily impeached" at trial, his status as an informant would have been "merely cumulative"); *United States v. Parker*, 790 F.3d 550, 562 (4th Cir. 2015) (impeachment value of information known to defendants was far less than fact that witness "may have been testifying in an effort to receive favorable treatment from the government."); *Spicer v. Roxbury Correctional Institute*, 194 F.3d 547, 561 (4th Cir. 1999) (rejecting argument that additional impeachment evidence was not material because witness "had already been impeached with evidence of his prior convictions, as well as the extremely favorable terms of his plea agreement").

And as a factual matter, the district court's materiality ruling understates the value of the undisclosed impeachment material and overstates the degree to which Mr. Gloria was actually impeached at trial. While there are cases in which additional impeachment, even of a crucial witness, is so cumulative of evidence already presented that it is immaterial because it "would have provided only marginal additional support for [the] defense," *United States v. Bartko*, 728 F.3d 327, 339 (4th Cir. 2013) (citations and quotation marks omitted), this is not such a case. Here, the suppressed impeachment evidence was different in force and in kind from the impeachment developed at trial.

While the district court pointed out that at trial, Mr. Gloria was revealed to have an "extensive criminal history" and to be thoroughly self-serving, the suppressed evidence gave him an additional motivation – of which the jury was not aware – to curry favor with the government. That motivation was to escape being charged with first degree murder, the most serious charge one can face. That additional, powerful motivation is not merely cumulative of any existing impeachment material, including the knowledge that Mr. Gloria was motivated to avoid more serious punishment in the instant case.

And this information would have had broader implications. A jury informed that Mr. Gloria may have committed a separate homicide would have stronger

15

grounds to question Mr. Gloria's true role in the instant case. The idea that Mr. Higgs had a reason to wish to kill the decedents came solely from Mr. Gloria, as did the account of the actions of Mr. Higgs and Mr. Haynes. Aside from what it heard from Mr. Gloria on the witness stand, the jury had no way of knowing who did what on the night in question. The jury could then have questioned whether Mr. Gloria himself had a greater role in the homicides than he claimed and thus that Mr. Higgs had a lesser role.

The jurors could also have reasonably questioned whether the government was truly seeking justice or was following a win-at-all-costs approach. It is well recognized that evidence that could cause the jury to question the "thoroughness and even the good faith of the investigation," *Kyles v. Whitley*, 514 U.S. 419, 445 (1995), is especially powerful and material. No such evidence was developed at trial, because it was suppressed by the government.

Finally, the district court overstated the degree to which Mr. Gloria's testimony was impeached at trial. Although the district court stated that "any evidence that Gloria may have received consideration for his testimony beyond that disclosed by the Government could not have further undermined his already low credibility," DCO, A-470, that view was not shared by this Court. This Court found that Mr. Gloria's "eyewitness testimony provided compelling and

16

convincing details of the events of that evening and of Higgs's involvement them."
*Higgs-4*, 663 F.3d at 741.  The fact that this Court described Mr. Gloria's testimony as "compelling and convincing," while the district court described his credibility as being so low that it was incapable of further tarnishing, is empirical proof that the materiality question is debatable among jurists of reason.

For all of these reasons, it is at least subject to debate among jurists of reason whether the suppressed evidence was material under *Brady*.  Accordingly, this Court should grant Mr. Higgs a COA.

## II.   THE CORRECTNESS OF THE DISTRICT COURT'S SUMMARY DENIAL OF THE FRAUD ON THE COURT ALLEGATIONS IS DEBATABLE AMONG JURISTS OF REASON.

Mr. Higgs has never had the opportunity to prove – by any standard – the existence of a fraud on the court.  Mr. Higgs has made specific allegations – supported by "considerable evidence," DCO, A-472 n.15 – that there was conduct which would constitute a fraud on the court.  At this stage of the proceedings, the district court erred in denying relief based on its finding that the proffered documents did not by themselves prove by clear and convincing evidence that a fraud had taken place.  *See*, *e.g.*, *Square Const. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71-73 (4th Cir. 1981) (while party alleging fraud must prove misconduct by clear and convincing evidence, movant's allegations and

17

supporting documents provided sufficient evidence of fraud to require remand for discovery regarding an allegedly withheld estimate "in order to ascertain its existence in fact, as well as all the circumstances surrounding its preparation."); *Pearson v. First NH Mortgage Corp.*, 200 F.3d 30, 35 (1st Cir. 1999) ("Although the ultimate burden to prove 'fraud on the court' by clear and convincing evidence rested with [the movant], . . . once the record evidence demonstrates a 'colorable' claim of fraud, the court may exercise its discretion to permit preliminary discovery and evidentiary proceedings.") (citation omitted); *accord Whitmore v. Symons Intern. Group, Inc.*, 2011 WL 806624 (S.D. Ind. 2011).

Accordingly, the district court should not have summarily dismissed the fraud on the court allegations. The standard for granting an evidentiary hearing in § 2255 proceedings is that "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court . . . shall grant a prompt hearing thereon." 28 U.S.C. § 2255(b). The Supreme Court and this Court have consistently applied this clear standard. *See*, *e.g.*, *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (reversing and remanding for a hearing where "we cannot conclude with the assurance required by the statutory standard . . . that under no circumstances could the petitioner establish facts warranting relief under § 2255); *Sanders*, 373 U.S. at 19-21 (same); *Machibroda*, 368 U.S. at 494

("We think the District Court did not proceed in conformity with the provisions of 28 U.S.C. § 2255 when it made findings on controverted issues of fact without notice to the petitioner and without a hearing."); *United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992) (a federal court "must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle [him] to relief."). Given that Mr. Higgs sought to reopen his § 2255 proceedings, the same standard applied.

The district court accepted the government's view of the underlying facts, although under the authorities set forth above it should have assumed the truth of Mr. Higgs's allegations. The district court was called on to make determinations that required resolution of highly disputed material facts. It cannot be said that the records before the district court conclusively showed that Mr. Higgs was entitled to no relief, particularly in light of the as-yet undisclosed additional contacts between federal and state officials. In light of the disputed material facts before the district court and the clear standard for the grant of hearings in § 2255 proceedings, a hearing was appropriate.

For the reasons set forth in greater detail in the Initial Brief being filed concurrently with this motion, this Court should remand for a hearing on the fraud on the court allegations. At a minimum, Mr. Higgs has shown that the correctness of the district court's decision is debatable among jurists of reason. Accordingly,

19

Mr. Higgs has made both prongs of the showing required by *Slack*, 529 U.S. at 484-85.  Therefore, this Court should grant COA and enter a final briefing order.

## CONCLUSION

For all of the reasons set forth herein and in the Initial Brief separately filed on this date, this Court should grant COA and enter a final briefing order.

Respectfully Submitted,


/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office
   for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
215-928-0520
Matthew_Lawry@fd.org

/s/ Stephen H. Sachs
Stephen H. Sachs
   WilmerHale LLP
   Five Roland Mews
Baltimore, MD 21210
(410) 532-8405
Steve.Sachs@wilmerhale.com

Dated:     January 17, 2017

**CERTIFICATE OF SERVICE**

I, Matthew Lawry, hereby certify that on this 17th day of January, 2017, I

electronically filed the foregoing motion using the Court's CM/ECF system.

Electronic notice will be provided to the following individuals:

> James A. Crowell IV
> Assistant United States Attorney
> Office of the United States Attorney
> 6500 Cherrywood Lane, Suite 400
> Greenbelt, MD 20770-1249
>
> Debra Lynn Dwyer
> Assistant United States Attorney
> Office of the United States Attorney
> 36 South Charles Street, 4th Floor
> Baltimore, MD 21201-0000
>
> Deborah A. Johnston
> Assistant United States Attorney
> Office of the United States Attorney
> 6500 Cherrywood Lane, Suite 400
> Greenbelt, MD 20770-1249
>
> /s/ Matthew C. Lawry
> Matthew C. Lawry