No. 16-15

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

DUSTIN JOHN HIGGS,
*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,
*Respondent-Appellee.*

_____

On Appeal from the United States District Court
for the District of Maryland
Criminal No. PJM-98-0520, Hon. Peter J. Messitte, U.S.D.J.

_____

**PETITION FOR REHEARING OR REHEARING *EN BANC***

_____

Leigh Skipper, Esq.
Chief Federal Defender
Matthew Lawry
Aren Adjoian
Cristi Charpentier
Elizabeth Hadayia
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Stephen H. Sachs
Wilmer Cutler Pickering Hale
& Dorr, LLP
5 Roland Mews
Baltimore, MD 21210
410-532-8405

Dated:      April 7, 2017

## PRELIMINARY STATEMENT

Prior opinions in this case will be cited as follows: this Court's opinion on direct appeal, *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), is cited as "*Higgs-1*"; this Court's opinion on the new trial motion appeal, *United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004), is cited as "*Higgs-2*"; the District Court's opinion denying the 2255 motion, *Higgs v. United States*, 711 F. Supp. 2d 479 (D. Md. 2010), is cited as "*Higgs-3*"; this Court's opinion denying the 2255 appeal, *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011), is cited as "*Higgs-4*"; and the District Court's opinion denying the Rule 60(d) motion, *United States v. Higgs*, 2016 WL 3541387 (D. Md. June 29, 2016), is cited as ("*Higgs-5*"). The panel's Order denying a certificate of appealability and dismissing the appeal (attached) is cited as "Panel Order."

The *Appendix* is cited as "A-" followed by the page(s). Higgs' *Initial Brief of Appellant* in this Court is cited as "*IB*."

All other citations are either self-explanatory or are explained. All emphasis is provided unless otherwise noted.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF PURPOSE ................................................................1

STATEMENT OF THE CASE................................................................2

      Procedural History…………..………………………………………………2

      Relevant Facts  …………..………………………………………………3

REASONS WHY REHEARING OR REHEARING EN BANC SHOULD BE GRANTED...........................................................................................7

      The Panel Erred in Requiring Petitioner to Obtain a COA Before He Could Appeal from the Denial of the Rule 60 Motion …………………..7

CONCLUSION ....................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases**

*Buck v. Davis*, 137 S. Ct. 759 (2017) ................................................................ 1

*Dunn v. Cockrell*, 302 F.3d 491 (5th Cir. 2002) ................................................ 8

*Garnett v. Clarke,* No. 16-6486, 2016 WL 6441056 (4th Cir. Nov. 1, 2016) ........ 8

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ................................................. 1, passim

*Gonzalez v. Sec'y for the Dep't of Corr.,* 366 F.3d 1253 (11th Cir. 2004)   1, passim

*Harbison v. Bell*, 556 U.S. 180 (2009) ............................................................. 1, 7

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944) ................... 3

*Higgs v. United States*, 711 F. Supp. 2d 479 (D. Md. 2010) ............................. 1, 6

*Ochoa Canales v. Quarterman*, 507 F.3d 884 (5th Cir. 2007) ............................. 8

*Reid v. Angelone*, 369 F.3d 363 (4th Cir. 2004) ....................................... 2, passim

*United States v. Ethridge*, 664 F. App'x 304 (4th Cir. 2016) ............................... 8

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) ...................................... 1, 4

*United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011) ......................................... 1

*United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004) ........................................ 1

*United States v. Higgs*, No. PJM-05-3180, 2016 WL 3541387 (D. Md. June 29, 2016) ............................................................................................................... 1

*United States v. McRae*, 793 F.3d 392 (4th Cir. 2015) ............................. 1, passim

*Wilson v. Sec'y, Dep't of Corr.,* 782 F.3d 110 (3d Cir. 2015) ........................... 7, 11

**Federal Statutes**

28 U.S.C. § 2253(c) ..................................................................................... 7, 9, 10

28 U.S.C. § 2255 (2012) .................................................................................... 2, 6

**Other**

Fed. R. Civ. P. 60(d) ........................................................................................... 3, 6

**STATEMENT OF PURPOSE**

Pursuant to Rule 35(b) of the Federal Rules of Appellate Procedure and Rule 40(b) of the Rules of the Fourth Circuit, undersigned counsel state that, in our judgment, the panel's order denying certificate of appealability (COA) and dismissing the appeal raises the following issue of exceptional importance:  must a habeas petitioner obtain a COA in order to appeal the denial of a motion for relief from judgment under Rule 60(b) or (d)?  This is an issue as to which the Supreme Court has noted a possible conflict among the circuit courts of appeal.  *See Buck v. Davis*, 137 S. Ct. 759, 772 n.* (2017) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 535 & n.7 (2005)).  As discussed below, while it does not appear that there is a current circuit conflict, Judge Tjoflat has explained at length why COA should not be required following denial of relief under Rule 60.  *See Gonzalez v. Secretary for the Dep't of Corr.*, 366 F.3d 1253, 1298-1300 (11th Cir. 2004) (en banc) (Tjoflat, J., concurring and dissenting), *subsequent history*, 545 U.S. 524 (2005).  Petitioner submits that the issue raised by Judge Tjoflat is one of exceptional importance that should be reviewed by this Court en banc.

Moreover, the correctness of decisions requiring a COA for an appeal from denial of a Rule 60 motion has further been called into question by the Supreme Court's decision in *Harbison v. Bell*, 556 U.S. 180 (2009).  In *United States v. McRae*, 793 F.3d 392 (4th Cir. 2015), this Court partially abrogated its prior

1

decision in *Reid v. Angelone*, 369 F.3d 363 (4th Cir. 2004), and explicitly left open whether *Harbison* requires a further reexamination of *Reid*. *See McRae*, 793 F.3d at 399-400 & n.7. This capital case is an appropriate one in which to undertake a reexamination of this issue of exceptional importance.

## STATEMENT OF THE CASE

### Procedural History

Mr. Higgs was charged with the January 27, 1996 deaths of three women occurring on federal land. On October 11, 2000, Mr. Higgs was convicted by a jury of three counts of first-degree premeditated murder, three counts of first-degree murder committed in the perpetration or attempted perpetration of a kidnapping, three counts of kidnapping resulting in death, and firearms charges. Following a sentencing hearing, the jury recommended that Mr. Higgs be sentenced to death on each of the nine death-eligible counts. This Court upheld the judgment on direct appeal, and affirmed the district court's denial of a new trial motion. *Higgs-1*; *Higgs-2*.

Mr. Higgs filed a motion for relief pursuant to 28 U.S.C. § 2255 on November 28, 2005. A-035 (hereafter "2255 Motion"). He also moved for discovery and a hearing. The district court summarily denied the 2255 motion, *Higgs-3*, and subsequently denied Mr. Higgs's motion for a COA. ECF No. 561.

Mr. Higgs then sought a COA from this Court on several issues. This Court denied a COA on all but one issue, and subsequently denied relief. *Higgs-4.*

On December 4, 2014, after receiving previously undisclosed documents from the Baltimore Police Department, Mr. Higgs filed his motion for relief from the district court's judgment, pursuant to *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and Federal Rule of Civil Procedure 60(d). A-085 (hereafter "Rule 60(d) Motion"). On June 29, 2016, the district court denied relief without granting discovery or a hearing. *Higgs-5*; *see* A-441.

Mr. Higgs filed a timely notice of appeal. A-475. This Court remanded for the district court to decide whether to issue a COA. Order of August 30, 2016, Doc. 3. On November 22, 2016, the district court issued an opinion and order denying Mr. Higgs's request for a COA. A-477. On appeal, the panel denied a COA and dismissed the appeal. Panel Order.

**Relevant Facts**

Victor Gloria was at the scene of two homicides, about two and a half years apart – the shooting deaths of three young women in January 1996 on Route 197 in the Patuxent National Wildlife Refuge, and the stabbing of Martrelle Creighton in July 1998 in the Inner Harbor area of Baltimore, Maryland. Mr. Gloria was arrested in connection with the Route 197 homicides in October 1998. See A-136-40. After initially denying any detailed knowledge about the Route 197 homicides,

3

he cooperated and gave the federal authorities a statement implicating both Dustin

Higgs and Willis Haynes in those murders.  Before he cooperated, the federal

authorities had only a tenuous case, and no real evidence as to which of the three

defendants had done what on the night of the offense.  *See* A-120 (statement by

trial prosecutor at Mr. Gloria's sentencing proceeding that the government "could

not have proceeded and obtain[ed] a conviction against Mr. Higgs" without Mr.

Gloria's testimony).  After he cooperated, the federal authorities had a case of first

degree murder against both Mr. Haynes and Mr. Higgs – a case that ultimately

resulted in first degree murder convictions for both, and the death sentence of Mr.

Higgs.  *See Higgs-1.*[1]

But there was a fly in the ointment, both for Mr. Gloria and for the

government.  After he cooperated, the federal authorities learned that Mr. Gloria

was present at the Creighton homicide, and three of the men who were present

---

[1] Mr. Gloria testified, *inter alia*, that Mr. Higgs had an argument with the
decedents, and that after the decedents left his apartment Mr. Higgs got a gun, used
Mr. Haynes to get them into Mr. Higgs's car, drove them to a secluded location,
and gave the gun to Mr. Haynes to carry out the killings.  *Higgs-1*, 353 F.3d at
289-91.  This testimony was critical to the convictions.  *Id.* at 289 ("[m]ost of the
facts surrounding the murders of the three women were obtained from [Gloria's]
eyewitness testimony").

implicated Mr. Gloria as the stabber.[2]  Mr. Gloria was now a suspect in the

Creighton homicide and if he were to be charged in that case, it would surely hurt

his status as the key witness in the Route 197 homicides.  Although there was

evidence pointing both towards and away from Mr. Gloria in the Creighton

homicide, the same could be said with respect to the other suspects.  Unlike the

other suspects, Mr. Gloria had an ace in the hole – his status as the key witness in

the Route 197 homicides.

Once the Baltimore authorities learned of Mr. Gloria's status, there were

numerous contacts between the Baltimore authorities and the federal agents and

prosecutors in the Route 197 case.  And the evidence gives rise to a clear inference

that the federal authorities talked to Mr. Gloria, and then passed his version on to

the Baltimore authorities – that the other suspects had only implicated Mr. Gloria

because they were friends with Mr. Haynes and Mr. Higgs.[3]  The Baltimore

authorities decided that was good enough for them, and neither interviewed nor

charged Mr. Gloria in the Creighton homicide.  *See* A-258 (memorandum by

---

[2] Documents regarding the Creighton murder investigation are included in the Appendix, at A-136-232, and discussed in detail in *IB* at 9-13.  *See also Higgs-5* at *3-*9.

[3] Documents regarding communications between the federal and Baltimore authorities, and reflecting knowledge by federal authorities of witness statements obtained in the Creighton murder investigation, are included in the Appendix, at A-237-58, and discussed in detail in *IB* at 13-18.

Baltimore Police Detective Patton adopting theory propounded by United States Attorney's Office that witnesses identified Mr. Gloria as the perpetrator to retaliate against him for testifying against Mr. Haynes and Mr. Higgs).[4]

None of this was disclosed to the defense at Mr. Higgs's trial. His counsel in post-conviction proceedings under 28 U.S.C. § 2255 got wind of it and filed a *Brady* claim and request for discovery. *See* A-035-60. But the government adamantly denied there was any truth to it, A-066-82, and the district court – relying on the government's representations – denied both the discovery request and the claim. *Higgs-3*, 711 F. Supp. 2d at 507-09, 557.

Years later, Mr. Higgs's counsel finally obtained the Baltimore police files. *See IB* at 22-23. Mr. Higgs filed a motion for relief under Fed. R. Civ. P. 60(d), alleging that the government's failure to disclose its role in shielding Mr. Gloria from prosecution for murder in Baltimore constituted a fraud on the court. A-085-284. Without further evidentiary development, the district court again denied relief, emphasizing that Mr. Higgs had not *proved* that the federal government's intervention was what led to the Baltimore authorities' decision not to charge Mr. Gloria. *Higgs-5*. As set forth in *IB* at 39-44, the District Court erred in deciding

---

[4] As the District Court noted, any information the United States Attorney's Office had about friendship between either Mr. Higgs or Mr. Haynes and the witnesses against Mr. Gloria, and any purported attempt to retaliate against Mr. Gloria, must have come from Mr. Gloria himself. *Higgs-5* at *14 n.12.

the intensely factual issues regarding the fraud allegations on the papers, without allowing discovery or an evidentiary hearing.

## REASONS WHY REHEARING OR REHEARING *EN BANC* SHOULD BE GRANTED

**The Panel Erred in Requiring Petitioner to Obtain a COA Before He Could Appeal from the Denial of the Rule 60 Motion.**

Under this Court's precedent, a COA is required for a habeas petitioner to appeal from the denial of a Rule 60 motion. This Court so held in *Reid v. Angelone*, 369 F.3d 363, 367-70 (4th Cir. 2004). In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court noted that there was an apparent circuit split on the issue. *Id.* at 535 n.7. In *Harbison v. Bell*, 556 U.S. 180 (2009), the Supreme Court cast further doubt on the question, holding that the COA requirement of 28 U.S.C. § 2253(c)(1)(A) applies only to "final orders that govern the merits of a habeas corpus proceeding – a proceeding challenging the lawfulness of the prisoner's detention." *Id.* at 183; *see Wilson v. Secretary Pa. Dep't of Corr.*, 782 F.3d 110, 115 (3d Cir. 2016) (noting that the "vitality" of Third Circuit precedent similar to *Reid* "is undermined somewhat" by *Harbison*). Following *Harbison*, in *United States v. McRae*, 793 F.3d 392 (4th Cir. 2015), this Court abrogated *Reid* in part, holding that the COA requirement of *Reid* does not apply to a jurisdictional

7

dismissal of a Rule 60 motion,[5] leaving open whether it continued to apply to denial of a Rule 60 motion (as here).  *Id.* at 399-400 & n.7.  While *McRae* expressly left open the issue whether the COA requirement of *Reid* remains good law when applied to the denial of a Rule 60 motion, panels of this Court have continued to apply *Reid*, albeit in non-precedential opinions.  *See, e.g.*, *United States v. Ethridge*, 664 F. App'x 304 (4th Cir. 2016); *Garnett v. Clarke*, No. 16-6486, 2016 WL 6441056 (4th Cir. Nov. 1, 2016).

The Supreme Court's suggestion of a circuit split in *Gonzalez v. Crosby* (and later in *Buck*) was primarily based on the Fifth Circuit's decision in *Dunn v. Cockrell*, 302 F.3d 491 (5th Cir. 2002) (holding no COA required to appeal denial of Rule 60 motion used to attempt to remedy failure to file timely appeal).  *See Gonzalez v. Crosby*, 545 U.S. at 535 n.7 (citing *Dunn*).  In *Ochoa Canales v. Quarterman*, 507 F.3d 884 (5th Cir. 2007), however, the Fifth Circuit limited *Dunn* to its facts, i.e., use of Rule 60 in an attempt to overcome a jurisdictional defect in the appeal.  *Id.* at 888.  Thus, as far as Petitioner is aware, there is no current conflict of authority among the circuits.  Nevertheless, for several reasons, this issue is one of exceptional importance that should be reviewed en banc by this Court.

---

[5] A rule 60 motion will be dismissed on jurisdictional grounds when, for example, the district court finds that it should have been filed as a successive petition.  Here, the District Court denied the Rule 60 motion.  *Higgs-5*.

First, this Court's reasoning in *Reid* was directly challenged by Judge

Tjoflat's concurring and dissenting opinion in *Gonzalez v. Secretary*. As pertinent

here, section 2253(c)(1) provides that without a COA, an appeal to the court of

appeals may not be taken from "the final order in a habeas corpus proceeding . . . ."

28 U.S.C. § 2253(c)(1)(A). In *Reid*, while acknowledging that the phrase "the

final order" means that there can only be "one order subject to the requirements of

§ 2253(c)" in any habeas proceeding, this Court ruled that there can be more than

one "habeas corpus proceeding" in a "single habeas action," and therefore the

COA requirement can and should apply to an order denying Rule 60 relief,

construed as "the final order" in the separate Rule 60 "habeas corpus proceeding."

*Reid*, 369 F.3d at 367-70.

In *Gonzalez v. Secretary*, Judge Tjoflat's reasoning was antithetical to that in

*Reid*. Judge Tjoflat noted that an order denying Rule 60 relief is appealable, like

an order denying habeas relief, but explained why the COA requirement does not

apply to orders denying Rule 60 relief:

> Although our appellate jurisdiction extends to all final decisions, §
> 2253's COA requirement does not. As a textual matter, § 2253
> requires a COA to appeal only *one* final order in a habeas corpus
> proceeding, not all orders. . . .
>
> In habeas cases involving more than one appealable order, such as
> orders disposing of Rule 60(b) motions or other postjudgment
> motions, § 2253's requirement of a COA as to the appeal of just *one*
> final order clearly extends to the petitioner's efforts, if any, to appeal

9

> the court's final judgment denying him habeas relief. The district court's judgment on the habeas petition is seemingly the only "final decision" that could deny the petitioner's constitutional challenge to his conviction or sentence. Therefore, that judgment is the only decision that § 2253(c)(2) seems to address; it is the only final order that could serve as the basis for the petitioner's "substantial showing of the denial of a constitutional right [,]" the showing he must make to obtain the COA. In contrast to judgments denying habeas relief, final orders denying a Rule 60(b) motion do not adjudicate a constitutional challenge to the movant's conviction or sentence. They simply state that the district court will not exercise its discretion to set aside the final judgment it entered.

*Gonzalez v. Secretary*, 366 F.3d at 1299 (Tjoflat, J., concurring and dissenting) (emphasis in original) (footnote omitted).

Judge Tjoflat's opinion thus challenges the underpinning of *Reid* – the idea that Congress intended in § 2253 that there could be multiple habeas "proceedings" within the framework of a "single habeas action," and that the COA requirement would apply to each of them, even those that "do not adjudicate a constitutional challenge to the movant's conviction or sentence." Judge Tjoflat's opinion raises a question of exceptional importance that this Court should grant en banc review to consider.

Second, that question was further sharpened by the Supreme Court's decision in *Harbison*. In *McRae*, this Court noted that *Gonzalez v. Crosby* "explicitly left open the question" whether the COA requirement applies to orders denying Rule 60(b) motions, and that "*Harbison* certainly bears on that question . .

10

. . ." *McRae*, 793 F.3d at 399. Recognizing that "*Harbison* holds that only final orders with a sufficient nexus to the merits of a habeas petition trigger the COA requirement," the *McRae* court explicitly left open the question "whether the COA requirement applies to *all* orders denying Rule 60(b) motions." *Id.*; *see also id.* at 400 n.7 ("The facts of the case before us do not require us to reexamine *Reid* in its entirety under *Harbison* and *Gonzalez*"); *Wilson*, 782 F.3d at 115 (questioning the "vitality" of Third Circuit precedent similar to *Reid* after *Harbison*). This case provides an opportunity for this Court to decide the important issue left open in *McRae*.

Third, the questions raised by *Harbison* about the COA requirement are particularly important in the circumstances of this case. Petitioner filed a Rule 60(d) motion, alleging that the Government committed a fraud on the court by falsely representing to the District Court that it had nothing to do with any benefits conferred by the Baltimore authorities to Victor Gloria with respect to the Martrelle Creighton homicide investigation and prosecution. Indeed, the District Court found that the Rule 60(d) motion was not a second or successive petition because it "'attack[ed] . . . the integrity of the federal habeas proceedings,' rather than the outcome of those proceedings . . . ." *Higgs-5* at *9 n.5 (quoting *Gonzalez v. Crosby*, 545 U.S. at 532).

While it is true that the alleged false representations were made in response to a constitutional claim for relief, the Rule 60(d) motion itself did not raise such a claim. *See Gonzalez v. Secretary*, 366 F.3d at 1299 (Tjoflat, J.) ("In contrast to judgments denying habeas relief, final orders denying a Rule 60(b) motion do not adjudicate a constitutional challenge to the movant's conviction or sentence."). Judge Tjoflat's comments are all the more trenchant post-*Harbison*, given that *Harbison* emphasizes that "only final orders with a sufficient nexus to the merits of a habeas petition trigger the COA requirement." *McRae*, 793 F.3d at 399.

This Court has never addressed these questions in any detail in the wake of *Harbison* and *McRae*. Now is the time to do so, in this capital case that raises serious and fundamental questions about the Government's conduct, which never received evidentiary resolution in the court below.

# CONCLUSION

For all of the reasons set forth above, Appellant Dustin Higgs respectfully

requests that this Court grant rehearing or rehearing *en banc*.

Respectfully Submitted,


/s/ Matthew C. Lawry      /s/ Stephen H. Sachs

Matthew C. Lawry       Stephen H. Sachs

Federal Community Defender Office  WilmerHale LLP

 for the Eastern District of Pennsylvania Five Roland Mews

Curtis Center, Suite 545-West    Baltimore, MD 21210

601 Walnut Street       (410) 532-8405

Philadelphia, PA 19106      Steve.Sachs@wilmerhale.com

215-928-0520

Matthew_Lawry@fd.org


Dated:   April 7, 2017

## CERTIFICATE OF SERVICE

I, Matthew Lawry, hereby certify that on this 7th day of April, 2017, I electronically filed the foregoing brief using the Court's CM/ECF system.

Electronic notice will be provided to the following individuals:

James A. Crowell IV
Assistant United States Attorney
Office of the United States Attorney
6500 Cherrywood Lane, Suite 400
Greenbelt, MD 20770-1249

Debra Lynn Dwyer
Assistant United States Attorney
Office of the United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD  21201-0000

Deborah A. Johnston
Assistant United States Attorney
Office of the United States Attorney
6500 Cherrywood Lane, Suite 400
Greenbelt, MD 20770-1249

/s/ Matthew C. Lawry
Matthew C. Lawry